UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY EDWARD LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:04-CV-459-TS |
| ) | |
| IVY TECH STATE COLLEGE, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The pro se Plaintiff, Anthony Edward Lewis, sued his former employer, Ivy Tech State College, and former supervisor, Jim Zion, alleging that he was subjected to harassment and discrimination because of his race in violation of Title VII of the Civil Rights Act of 1964. He also alleged that he was "constructively discharged in retaliation" for complaints he made about Zion. (Pf.'s Compl., ¶ III.) After the Defendant filed for summary judgment on February 17, 2006, the Plaintiff made no attempt to respond. For the reasons stated herein, the Defendant's unopposed motion for summary judgment will be granted.

**BACKGROUND**

On August 10, 2004, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission's deferral agency, the Fort Wayne Metropolitan Human Relations Commission (Metro). The Plaintiff alleged that while he was employed as a computer technician at Ivy Tech he was subjected to a hostile work environment and discriminated against on the basis of his race. On October 18, 2004, the EEOC issued a Dismissal and Notice of Right to Sue. On December 7, 2004, the Plaintiff filed his Complaint against Ivy Tech and Zion asserting racial

discrimination, harassment, retaliation, and constructive discharge.

On January 26, 2005, the Defendants filed their Answer and Zion filed a motion to dismiss on the basis that he was not an "employer" under Title VII and could not be held liable as an individual. On March 21, the Plaintiff responded to Zion's motion to dismiss and on March 23, Zion replied. On May 26, the Court granted Zion's motion and dismissed him from the suit.

On February 17, 2006, Ivy Tech moved for summary judgment on all the Plaintiff's claims. It asserted that the Plaintiff's claims for retaliation and constructive discharge were not actionable because they were not included in the charge of discrimination. The Defendant also argued that some of the events the Plaintiff complained of occurred outside the 300-day limitations period within which he was required to file a charge. Lastly, the Defendant submitted that the Plaintiff's claims had no factual or legal support. The Defendant filed a separate Notice to the Plaintiff advising him of his obligation to respond to the summary judgment motion and the consequences of any failure to respond. The Plaintiff did not file a response.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). However, under Northern District of Indiana Local Rule 56.1(b), the Court is to assume that the facts claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence.

There is no separate rule of civil procedure governing summary judgment in employment discrimination cases. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997) (noting, however, that issues of intent, such as in discrimination cases, are often critical issues that are genuinely contestable). Summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases. *Id.*

3

**DISCUSSION**

**A.     Race Discrimination and Harassment**

Title VII makes it unlawful for an employer to "discriminate . . . because of [an] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[T]his statutory text means that the 'touchstone of Title VII is, of course, discrimination or disparate treatment.'" *Moranski v. General Motors Corp.*, 433 F.3d 537, 541 (7th Cir. 2005) (citing *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000)). "By its terms, this provision of Title VII proscribes only workplace discrimination on the basis of sex, race, or some other status that the statute protects; it is not a 'general civility code' designed to purge the workplace of all boorish or even all harassing conduct." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)).[1]

When a plaintiff has no direct evidence of discrimination, he can create a triable issue of fact as to whether he was discriminated against on the basis of his race and survive summary judgment through the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, the plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005). If the Plaintiff fails to

---

[1] The Plaintiff's own submissions indicate that at the time he filed his Complaint, he recognized that the Supreme Court's holding in *Oncale* affected the viability of his claims. The Plaintiff attached to his Complaint an article from the *Frost Illustrated*, a local independent newspaper presenting the "News and Views of African Americans." The article, which featured his discrimination lawsuit against Ivy Tech, noted the Plaintiff's complaint that, since filing his charge with Metro, he learned that no laws are in place to protect him because "[a]ccording to a 1998 U.S. Supreme Court case, the law does not require 'general civility' of employers who treat all employees equally, even if they're all treated badly."

establish even a single prong of his prima facie case, his claim cannot survive summary judgment. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

The Plaintiff alleges that, in addition to discriminating against him, the Defendant allowed Zion and others to harass him on the basis of his race. An employer violates Title VII if it is responsible for a "hostile work environment." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir.2000). To survive a summary-judgment motion, an employee alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Id.*

The Court need only discuss one element of the Plaintiff's discrimination and hostile work environment claims. A review of the record leads the Court to conclude that no reasonable jury could conclude that the Plaintiff's race was a motivating factor for Zion, or any other person at Ivy Tech. "Personal animosity, even monstrous conduct, is not actionable under . . . Title VII unless based on race." *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1294 (7th Cir.1987). The Plaintiff offers nothing more than his subjective belief and speculation that his race was a motivating factor for any action taken against him; this is not sufficient to create a genuine issue of material fact. *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) (stating that "conjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion"); *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989) (finding that the plaintiff's subjective belief that the defendant was racially biased was not sufficient to avoid summary judgment).

Summary judgment is the moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The Plaintiff has simply not presented any evidence that the conduct about which he complains was connected to his race. *See Beamon*, 411 F.3d at 863–64 (holding that "alleged harassment must be 'sufficiently connected to race' before it may reasonably be construed as motivated by the defendant's hostility to the plaintiff's race") (quoting *Luckie v. Ameritch Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) and *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001)). He has not demonstrated that any employment decision was "inherently racial" or had "racial overtones." *Id.* at 864. He has not pointed to any racial slurs, comments, or jokes. Nor has he shown that similarly situated employees outside the protected class were treated better. *Adams v. Wal-Mart Stores, Inc*., 324 F.3d 935, 939–40 (7th Cir. 2003) (under familiar burden-shifting paradigm set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), plaintiffs must first establish a prima facie case by demonstrating, among other things, that a similarly situated person outside the protected class was treated better).

The undisputed facts, when viewed in a light most favorable to the Plaintiff, establish that he did not get along with his supervisor, Jim Zion, whom he believes to be a tyrant, a bully, passive aggressive in his style of management, dishonest, and disrespectful—to everyone he worked with. However, Title VII "does not guarantee a utopian workplace, or even a pleasant one." *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir.1994). He also believes that Zion is a racist. But "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon*, 411 F.3d at 863. Because this is precisely the type of "evidence" of discrimination that the Plaintiff offers, his claims must be

6

dismissed as a matter of law.

The Plaintiff's most serious allegation against Zion is that, in March 2002, he grabbed the Plaintiff's ear and pulled him to a room where he had been directed to work after the Plaintiff started moving in the wrong direction. The Plaintiff was not able to point to any evidence that this incident was racially motivated.

In his deposition, the Plaintiff admits that his belief that a non-supervisory employee reacted more negatively to him than he would have to a white technician in the same circumstances was "speculation." He proffered that it was "very good speculation," but that it was all he had. (Pf.'s Dep. at 54–55.) He admitted that the employee did not make any comment about race, either on that occasion or any other. (Pf.'s Dep. at 52.)[2]

Other than the ear-pulling incident, the Plaintiff believes that Zion's actions amounted to "nit-picking." (Pf.'s Dep. at 89–90.) When asked what led the Plaintiff to believe that this nit-picking was based on his race, the Plaintiff testified:

> Well, of course, one of the things you obviously have to note is the fact regardless of the fact that I'm a black man, I'm an exceptional human being anyway. I am my own man. And you pull any other black man off the street, well, maybe here in Fort Wayne is not a good example, and you would be very hard pressed to find one anything like me.
> But then, of course, another factor . . . is that I'm not from Fort Wayne. I'm from Chicago and I'm better left there.
> Anyway to answer your question, what finally cinched it in my mind that Jim Zion's assault on my person and the subsequent relevant constructive discharge was racially motivated is circumstantial.

(Pf.'s Dep. at 100.) When asked to provide the pieces of circumstantial evidence, the Plaintiff

---

[2] This event also happened in March 2002. As the Defendant notes, a plaintiff in Indiana must file a charge of discrimination with the EEOC within 300 days after an alleged unlawful employment practice and failure to file a timely charge precludes a subsequent lawsuit. The Plaintiff did not file his charge of discrimination within 300 days of these March 2002 events. Regardless of the timeliness of these claims, they will be summarily dismissed because there is no evidence that they were based on the Plaintiff's race.

7

answered that he did not "believe" Zion would have treated anyone else with the same level of disrespect. (Pf.'s Dep. at 100–01.)

When asked who were the white employees that were treated differently, the Plaintiff named Paul Chapman, David William, and a third technician who worked under Zion. (Pf.'s Dep. at 151.) When asked how they were treated differently, the Plaintiff testified: "Well, you do recall that we are talking about Jim Zion and he was an asshole and treated everybody like dirt any damned way you know. To say necessarily he treated me worse than anybody else, that might be suspect in some ways." (Pf.s' Dep. at 151–52.)

The Seventh Circuit requires that a plaintiff who claims that he was disciplined by her employer based on some prohibited reason, show that she is similarly situated with respect to performance, qualifications and conduct to an employee who was not disciplined in the same manner. *Snipes v. Ill. Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). The Plaintiff has not done this. At his deposition, the Plaintiff was given an opportunity to state whether he had any reason to believe that Zion wrote him up for violations, or for anything, that other white technicians were also doing but not getting written up for. His response was "I don't know. I can't prove that." (Pf.'s Dep. at 202.)

When asked specifically if the three white employees were allowed to come in late without being disciplined, the Plaintiff responded that he did not have access to their disciplinary records. He opined that he was sure they were probably also disciplined, not because he had any documentation, but because he knew that Zion "was an asshole to every damned body." (Pf.'s Dep. at 153.) The Plaintiff testified that he was not the only one that Zion had problems with because Zion "had a problem with every damned body anyway." (*Id.*) However, the very next words out of the

8

Plaintiff's mouth were, "I still stand by my proposition that he treated me differently." (*Id.*)

As an example of differential treatment, the Plaintiff recounted an incident where he was given an assignment to work in one of the classrooms and was reprimanded by Zion for talking with the instructor. (Pf.'s Dep. at 154–55.) The Plaintiff testified that he suspected that Zion was jealous because the Plaintiff was able to socialize and enjoy his work. When asked whether he knew if any of the white technicians had every been disciplined for spending too much time talking, the Plaintiff responded that he did not think it was an issue for them and did not know if that ever occurred. (Pf.'s Dep. at 160–61.) He later stated that he did not believe that they engaged in socializing because "they were conditioned not to." (Pf.'s Dep. at 161.)

The Plaintiff also complains that he was directed by Zion to work in a "hazardous central closet area." (Pf.'s Dep. at 182.) This was the storage area that contained computers, monitors, printers, and their parts. It was hazardous, according to the Plaintiff, because there was too much stuff in too small a space. (Pf.'s Dep. at 183.) He testified that he was not the only one that ever worked in the storage area, but that he was the only one specifically directed to go there. (Pf.'s Dep. at 185.) He thought he was directed there because, by that point, Zion wanted to keep him out of sight. (Pf.'s Dep. at 185.) He stated that he, likewise, did not want to be near Zion. (Pf.'s Dep. 187.) The Plaintiff acknowledged that when he was directed to go to the storage area it was to perform a legitimate inventory function.

He also questioned Zion's motive for setting his lunch and break schedules at a certain time. When asked whether it could have been because he was coming in late and taking long lunches, the Plaintiff responded that it was a "convenient superficial way of looking at what happened and what was going on. I believe that you make the situation what it is you want then you justify it after the

9

fact to call it whatever it is the f- - - k you want." (Pf.'s Dep. at 190.) This response, again, is nothing more than the Plaintiff's own speculation of his supervisor's motive. It also ignores the fact that the Plaintiff was not similarly situated to these white co-workers. *Adams*, 324 F.3d at 940 (noting that in disciplinary situations, the plaintiff is required to show that two employees dealt with the same supervisor, were subject to the same workplace rules, and *engaged in similar conduct*, but nonetheless received disparate treatment *for no apparent legitimate reason*) (emphasis added).

The Plaintiff also believes that the Defendant's failure to publish his essay, entitled "I'm on a Mission," in its newsletter before his deployment is evidence of discrimination. Again, the Plaintiff was not able to point to anything that would suggest that he was treated differently than a similarly situated employee outside the protected class. When asked to explain why he believed that race was one of the reasons that the school did not publish his essay, the Plaintiff opted to discuss how "the media" avoided black soldiers, preferring the white ones, while he was in Iraq and Kuwait. (Pf.'s Dep. at 179.) The Plaintiff did not specifically address the Defendant's motive regarding its treatment of his essay but acknowledged that not every submission to the school is published and that there would have been submissions by white employees that were also denied. He also admitted that his belief that the Defendant did not publish his essay because of his race was not supported by anything that anybody said. (Pf.'s Dep. at 181.)

The "harassment" of which the Plaintiff claims "could just as readily have been perpetrated upon a white person without any alteration in its character or purpose." *Beamon*, 411 F.3d at 864 (finding that the defendant's actions could not reasonably be construed as being motivated by hostility to the plaintiff's race). The Plaintiff himself testified that "on the surface it looks as though [Zion] is essentially doing his job, which is to be my supervisor." (Pf.'s Dep. at 89.) This is not the

10

kind of workplace that gives rise to a lawsuit under Title VII. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (stating that as long as hostility is not based on a protected characteristic, Title VII is not implicated).

The claim of "discrimination" is likewise flawed. The Plaintiff presents no direct or circumstantial evidence that his race was a motivating factor. In addition, he has failed to make out a prima facie case of discrimination because he has not presented any evidence that he was treated worse than similarly situated white employees.

For these reasons, the Defendant is entitled to summary judgment on the Plaintiff's claims that it discriminated against him and harassed him on the basis of his race.

**B.     Retaliation and Constructive Discharge**

The Plaintiff's retaliation and constructive discharge claims exceed the scope of his EEOC charge. The Plaintiff did not include either claim in his charge of discrimination and did not check the box for retaliation. Generally, a Title VII plaintiff may bring only those claims that were included in his EEOC charge or that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 481–82 (7th Cir. 1996) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976)).

Here, there is no reasonable relationship between the allegations in the charge and the claims in the Complaint. Because the Plaintiff only mentioned racial discrimination and harassment in his charge, he did not put the EEOC or the Defendant on notice that he was claiming that these actions were motivated by a desire to retaliate against the Plaintiff for making a complaint of discrimination. *McKenzie,* 92 F.3d at 481–82 (noting that filing rule serves the dual purpose of affording the EEOC

and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved). Neither do the allegations in the charge indicate that the reason the Plaintiff was no longer working at the school was because unlawful discrimination made his working conditions so intolerable that a reasonable person would be forced into involuntary resignation. *See Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (constructive discharge standard). Because the acts the Plaintiff complains about occurred before the filing of his charge, he could have, and should have, included them in the charge he filed with Metro on August 10, 2004. Therefore, the retaliation and constructive discharge claims are not properly before this Court and will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion for Summary Judgment [DE 39]. Judgment will be entered for the Defendant, Ivy Tech State College, and against the Plaintiff, Anthony Edward Lewis.

SO ORDERED on May 18, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT